**Paul PULLMAN, individually and on behalf of other unsuccessful applicants similarly situated for oil and gas leases in Wyoming offered by the Bureau of Land Management under the Simultaneous Oil and Gas System, Plaintiff-Appellant,**

v.

**Raymond CHORNEY, et al., Defendants-Appellees.**

**No. 81–1386.**

United States Court of Appeals, Tenth Circuit.

July 20, 1983.

Burton L. Knapp, New York City (Neil L. Selinger, New York City, with him on brief), of Lowey, Dannenberg & Knapp, P.C., New York City (also Theodore S. Halaby of Halaby & Bahr, Denver, Colo., with him on brief), James E. Nesland, Denver, Colo. (Edward O. Byrne and John H. Evans, Denver, Colo., with him on brief), of Ireland, Stapleton & Pryor, P.C., Denver, Colo., for defendants-appellees Raymond Chorney, Joan Chorney, Chorney Oil Co., Seabrook Corp. and Lancaster Corp. (also William H. Brown of Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., on brief, for defendants-appellees L. Stanley and Hazel Stanley).

Jacques B. Gelin, Washington, D.C. (Carol E. Dinkins, Asst. Atty. Gen. and Robert L. Klarquist) of the Dept. of Justice, Washington, D.C., with him on brief (also Joseph Dolan, U.S. Atty., and Daniel R. Christopher, Asst. U.S. Atty., Denver, Colo.), with him on brief, for defendants-appellees Cecil D. Andrus, Charles W. Duncan, Jr., and Maxwell T. Lieurance.

Before HOLLOWAY, McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

Paul Pullman appeals from the district court's summary judgment for the defendants in a civil suit arising out of lotteries run by the Secretary of the Interior to determine who may lease oil rights of federal property. The purpose for and mechanism of the lottery are described in detail in the trial court's opinion, *Pullman v. Chorney*, 509 F.Supp. 162 (D.Colo.1981).

## I

In April 1980, defendant Chorney Oil Company pleaded guilty to criminal charges arising out of violations of 43 C.F.R. §§ 3112.4–3 and 3112.6–1(c). These regulations, promulgated by the Department of the Interior, prohibit a lottery entrant from agreeing to assign his pre-lottery interest in the lottery's outcome. The regulations are meant to prevent a single entity from acquiring an unfairly high probability of winning a lottery by acquiring the interests of several entrants before the lottery is held. As a result of Chorney's guilty plea, the government cancelled several oil leases that Chorney had acquired from lottery winners.

On August 21, 1980, Mr. Pullman brought this class action against the Secretaries of the United States Departments of Interior and Energy, the Director of the Bureau of Land Management for Wyoming, and several private defendants, including Chorney Oil Company. Mr. Pullman claimed that the private defendants had violated sections

3112.4–3 and 3112.6–1(c) in lotteries for leases obtained by the defendants that had not been cancelled in the criminal proceedings against Chorney. Mr. Pullman sought an order requiring the Secretary of the Interior to set aside the leases he claimed were awarded in violation of the regulations. He also sought monetary and injunctive relief from the private defendants. The trial court dismissed the suit for lack of standing. *See* 509 F.Supp. at 166–68.

## II

■ Although the trial court dismissed this suit for lack of standing, the defendants raise several alternative grounds for the judgment. When dispositive, indisputable, alternative grounds appear in the record and are raised on appeal, an appellate court may rely on them to sustain the judgment of the court below. *California Bankers Association v. Shultz*, 416 U.S. 21, 71, 94 S.Ct. 1494, 1522, 39 L.Ed.2d 812 (1974). We shall consider Mr. Pullman's claim for an order that the leases be cancelled separately from his other claims.

## A

The Interior Department's regulations allowed Mr. Pullman thirty days to challenge the Secretary's awarding the oil lease by appealing to Interior Board of Land Appeals ("IBLA"). 43 C.F.R. §§ 4.410, 4.411. Only after such an appeal has been decided by the IBLA is the Secretary's decision "final" and subject to judicial review. *See id.* § 4.21(b). Section 42 of the Mineral Lands Leasing Act, 30 U.S.C. § 226–2 (1976), provides that "[n]o action contesting a decision of the Secretary [of the Interior] involving any oil and gas lease shall be maintained unless such action is commenced or taken within ninety days after the final decision of the Secretary relating to such matter." In the lower court, Mr. Pullman asserted or assumed that (a) his thirty-day period to appeal the award of the lease to

the IBLA was tolled until he discovered the alleged improprieties, (b) the consequence of his failure to appeal the award to the IBLA was that there was a "final order" of the Secretary at the end of the thirty days (rather than that he had forfeited judicial review),[1] and (c) the ninety-day statute of limitations commenced only when there was a "final decision" of the Secretary, which occurred thirty days after Mr. Pullman discovered the alleged fraud, when his time to appeal the award of the lease to the IBLA expired.[2]

■ Even if all of these assumptions are correct—about which we express no opinion—Mr. Pullman had at most 120 days to commence his action after he was put on notice of the alleged improprieties. Mr. Pullman admits in his complaint that the criminal action against Chorney Oil put him on notice of the alleged violations underlying his suit. Chorney pleaded guilty on April 18, 1980. Mr. Pullman filed this suit on August 21, 1980, more than 120 days later. Thus, section 226–2 bars Mr. Pullman's suit insofar as it seeks cancellation of the leases. Accordingly, we hold that the trial court correctly dismissed this portion of Mr. Pullman's complaint.

## B

■ Mr. Pullman also seeks monetary and injunctive relief from the private defendants as well as an order that the Interior Department comply with its regulations. He bases his claim on the private defendants' alleged violations of 43 C.F.R. §§ 3112.4–3 and 3112.6–1. Since there is no explicit provision for a private cause of action for violations of these regulations, Mr. Pullman apparently relies on an implied cause of action. However, a mere proscription of behavior does not justify an inference of a private cause of action for its violation; instead, there must be some evidence that Congress intended one. *Trans-*

---

1. *But see Rawls v. Secretary of the Interior,* 460 F.2d 1200 (9th Cir.1972).

2. Alternatively, Mr. Pullman might have assumed that his thirty days to appeal to the

IBLA was not tolled but the period prescribed by § 226–2 was. These assumptions, even if valid, would not change our result.

america *Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). Although section 226–2 implies that Congress intended to allow private litigants to seek cancellation of leases awarded by the Secretary, nothing in the legislative history suggests that Congress intended to provide them anything beyond this narrow remedy. In fact, the Act itself implies that there should be no further private remedy since 30 U.S.C. § 184(h)(1) (1976) authorizes the Attorney General to bring an action for the forfeiture of any lease acquired in violation of the Act. *See Kissinger v. Reporters Committee for Freedom of the Press,* 445 U.S. 136, 149, 100 S.Ct. 960, 967–968, 63 L.Ed.2d 267 (1980) ("[I]t is 'an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' "). Since we find no reason to read other remedies into this act—which was enacted to benefit the public by stimulating mineral development, not to protect drawees in oil lotteries—we decline to do so. Mr. Pullman has no private cause of action besides his claim for an order that the Secretary cancel the leases involved in this suit, which we have already determined was properly dismissed.

The judgment of the district court is affirmed.